UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**CONNECTICUT FAIR HOUSING CENTER** *et al.*,

        *Plaintiffs,*

v.

**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,**

        *Defendant.*

No. 3:18-CV-705 (VLB)

**PLAINTIFFS' LOCAL RULE 56(a)(1)
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(a)(1), Plaintiffs submit this statement of undisputed facts in support of his Motion for Summary Judgment. Specifically, Plaintiffs maintains that the following material facts are not genuinely disputed for purposes of the motion for summary judgment:

1. Plaintiff Carmen Arroyo is the conservator for her son, Mikhail Arroyo, who sustained a traumatic brain injury in a 2015 accident that left him unable to walk, speak, or care for himself. Ms. Arroyo is the conservator of the estate and the person for Mikhail. Dec. of C. Arroyo, ¶ 1-3.

2. In April 2016, Ms. Arroyo requested permission from her landlord, WinnResidential, to move Mikhail from a nursing home into her apartment after he had recovered sufficiently for discharge. *See* Dec. of C. Arroyo, ¶ 5.

3. Mikhail's application was denied when a criminal background report from Defendant CoreLogic indicated that he had disqualifying criminal history. *See* Dec. of C. Arroyo, ¶ 6; Ex. A (Defendant's Responses to Plaintiffs' First Set of

1

Requests for Admissions) (hereafter, "Defendant's Admissions") Nos. 36-37, 40, 44, 49-50, 54); *See* also Ex. B (Dep. of CoreLogic 30(b)(6) Designee Naeem Kayani) (hereafter, "Kayani Dep.") at 235:20-236:8.

4.  Carmen Arroyo did not know what criminal records Mikhail had, or what records had caused CoreLogic to deem him unqualified, and was told by the WinnResidential leasing agent who processed Mikhail's application that she had to obtain that information directly from CoreLogic. *See* Dec. of C. Arroyo, ¶¶ 6, 8.

5.  The letter from CoreLogic denying Mikhail's application for tenancy did not contain any information about what criminal records were attributed to him or used to deem him unqualified, simply stating that "[t]his adverse action has been taken in accordance with the requirements of federal Fair Credit Reporting Act, 15 U.S.C. 1681m(a)" and that "this decision was based on information contained in consumer reports obtained from or through CoreLogic SafeRent, LLC which may include credit or consumer information from one or more credit bureaus or consumer agencies." *See* Kayani Dep. at 239:16-240:2; Kayani Dep. Ex. 24.

6.  In order to secure the information she needed to challenge the denial, Ms. Arroyo contacted CoreLogic on multiple occasions between April and November, 2016 to request disclosure of the information it had on file about Mikhail. *See* Dec. of C. Arroyo, ¶ 8-16.

7.  Ms. Arroyo intended to use these disclosures both to understand and hopefully formulate a persuasive request to WinnResidential that Mikhail be admitted despite the criminal history. *See* Dec. of C. Arroyo, ¶ 7.

8. Ms. Arroyo's first request for disclosures was made by telephone on April 27, 2016, following the denial of his admission to Artspace Windham. *See* Dec. of C. Arroyo, ¶ 9; Defendant's Admissions Nos. 2-3, 6.

9. This was only the first of several telephone calls Ms. Arroyo had with CoreLogic for this purpose between then and November 2016. *See* Dec. of C. Arroyo, ¶ 9.

10. In those calls, Ms. Arroyo communicated to CoreLogic that she was Mikhail's court-appointed conservator, that she sought disclosure of his consumer file in connection with an effort to secure rental housing, and that Mikhail had disabilities that prevented him from making the request himself. *See* Dec. of C. Arroyo, ¶ 9-10, 12-14.

11. CoreLogic did not make any disclosures of Mikhail Arroyo's consumer information in response to these requests. *See* Defendant's Admission Nos. 7-8, 10-12.

12. CoreLogic sent Ms. Arroyo a copy of CoreLogic's consumer disclosure request form, and instructed her to return the completed form along with copies of both her own identification and Mikhail's, as well as documentation showing that she was appointed conservator over Mr. Arroyo's person and estate. *See* Defendant's Admission No. 9; Dec. of C. Arroyo, ¶ 10-11.

13. Ms. Arroyo returned the completed form by mail on June 14, 2016, and enclosed: (i) the completed consumer disclosure request form, listing Mikhail Arroyo's name, date of birth, and previous addresses and was signed by Carmen Arroyo, (ii) copies of Carmen and Mikhail Arroyo's driver's licenses, and (iii) a

3

copy of the certificate of conservatorship establishing that Carmen Arroyo had authority to request the consumer file on Mikhail Arroyo's behalf.  *See* Dec. of C. Arroyo, ¶ 10; Defendant's Admissions Nos. 13-17.

14.    CoreLogic, which reports having received these materials on June 30, 2016, did not make any disclosures in response.  *See* Defendant's Admissions Nos. 15, 17-20; Dec. of C. Arroyo, ¶ 11.

15.    When CoreLogic did not produce any disclosures in response to her earlier requests, Ms. Arroyo had a series of additional telephone calls with CoreLogic in the fall of 2016.  *See* Dec. of C. Arroyo, ¶ 12-16.

16.    Ms. Arroyo again orally requested Mikhail Arroyo's consumer file from CoreLogic, and referenced her earlier requests, and also reiterated to CoreLogic that Mr. Arroyo had was unable to make the request himself due to his disabilities, and that she was his conservator.  *See* Dec. of C. Arroyo, ¶ 12.

17.    CoreLogic's representative acknowledged that CoreLogic had received Ms. Arroyo's earlier requests and follow-up documentation, but that CoreLogic would not provide any information to Ms. Arroyo unless she provided a "power of attorney" from Mikhail.  *See* Dec. of C. Arroyo, ¶ 12; Defendant's Admission No. 35.

18.    After learning of the "power of attorney" requirement, Ms. Arroyo contacted the attorney handling the conservatorship and was told that a conservatorship provided even greater authority than a power of attorney would carry.  *See* Dec. of C. Arroyo, ¶ 13.

4

19.     Ms. Arroyo called CoreLogic again and explained this to CoreLogic's representative, who promised to follow up with CoreLogic's legal department regarding the issue.  *See* Dec. of C. Arroyo, ¶ 13.

20.     Over the next several weeks, Ms. Arroyo had additional telephone conversations with a specific CoreLogic employee, Tina Marie Santos, throughout which Ms. Santos repeatedly stated that CoreLogic's legal department was reviewing the matter.  *See* Dec. of C. Arroyo, ¶ 14-16.

21.     Ms. Santos requested additional documentation throughout this period, including yet another version of the consumer disclosure request form, additional proof of Ms. Arroyo's address, and another copy of the conservatorship certificate.  *See* Dec. of C. Arroyo, ¶ 14.

22.     Ms. Arroyo provided all of the requested additional materials (which included (i) an additional a consumer disclosure request form signed by both herself and Tad Stimson, Mikhail's co-o-conservator, (ii) another copy of her certificate of conservatorship, (iii) a utility bill showing her address, and (iv) correspondence from the government addressed to Mikhail Arroyo but sent to Carmen Arroyo) by fax and mail on November 14 and 15, 2016.  *See* Dec. of C. Arroyo, ¶ 14; Defendants' Admissions Nos. 29-30, 33-34.

23.     Nonetheless, CoreLogic still did not provide the disclosures.  *See* Dec. of C. Arroyo, ¶ 15.

24.     In December 2016, Ms. Arroyo sought assistance with this matter from the Connecticut Fair Housing Center and had no further communication with CoreLogic after that point in time.  *See* Dec. of C. Arroyo, ¶ 17.

25. Ms. Arroyo still had not received disclosures of Mikhail's consumer information from CoreLogic by December 2016.  *See* Dec. of C. Arroyo, ¶ 17; Defendants' Admissions Nos. 19-21, 27-28.

26. CoreLogic never made the disclosures.  *See* Defendant's Admissions Nos. 7-8, 10-12, 17-20, 27-28; Dec. of C. Arroyo ¶ 17.

27. But for his disabilities, Mikhail could have personally requested and obtained the file disclosures himself or executed a power of attorney to allow his mother to do so, and used the contents to challenge the determination that his file contained "disqualifying" records.  *See* Dec. of C. Arroyo, ¶ 18.

28. CoreLogic instructs housing providers like WinnResidential that "[i]f the applicant questions the decision, suggest they contact [CoreLogic's] Consumer Relations to review a copy of their [consumer] reports… The applicant must contact Consumer Relations.  Property staff should not contact Consumer Relations."  *See* Ex. H (Dep. of R. Lindenfelzer) (hereafter, "Lindenfelzer Dep.") at 105:3-107:12; Lindenfelzer Dep. Ex. 6 at 27.

29. After Carmen, with the assistance of the Connecticut Fair Housing Center, determined what Mikhail's criminal record consisted of, she was able to use that information to persuade her landlord to overlook his criminal history.  *See* Dec. of C. Arroyo, ¶ 19.

30. Plaintiffs' Expert Nancy Alisberg is one of the founders of Disability Rights Connecticut designated by the state to be the protection and advocacy system in Connecticut.  Before that, she worked for 17 years in the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities,

where she oversaw the Legal Unit of the state agency that advocated for the rights of people with disabilities.  Ex. F (Alisberg Resume).  In her work, she was had many clients who were conserved. I was required to know the standards for conservatorship and the rights of both the conservator and the conserved person.  See Ex. G (Expert Report of Nancy Alisberg) at 1.

31. Dr. Alisberg intends to testify as to the opinions in her report regarding (1) whether, and to what degree, people who are involuntarily conserved are disproportionately likely to be individuals with disabilities as defined by the Fair Housing Act as compared with the general population, and (2) whether, and to what degree, people who are involuntarily conserved are less likely than the general population to have the capacity or ability to designate an attorney-in-fact.  Dr. Alisberg examined a number of statutes, regulations, and treatises in forming her opinions.  See Ex. G (Alisberg Report) at 1-2.

32. Dr. Alisberg determined that a person who is involuntarily conserved in the State of Connecticut has no ability to designate a power of attorney.  See Ex. G (Alisberg Report) at 5-8.

33. Every person with a court-ordered conservatorship in Connecticut has or is regarded as having a physical or mental impairment that substantially limits a major life activity—and thus has a cognizable disability (or "handicap") for Fair Housing Act purposes. See Ex. G (Alisberg Report) at 3-5.

34.     People with disabilities comprise 100% of those with court-ordered conservatorships in Connecticut, but only 11% of the overall population.  *See* Ex. G (Alisberg Report) at 3-5.

35.     By requiring a power-of-attorney and refusing to make disclosures to a conservator, CoreLogic effectively denies all such disclosures to conserved persons.  *See* Alisberg Report, p. 7-8.

36.     CoreLogic assembles criminal history information about consumers, uses that information in furnishing reports to third parties (i.e., landlords), actually furnishes such reports—and in multiple states—through electronic transmissions, and receives monetary fees for providing these reports.  *See*, e.g., Defendant's Admissions Nos. 36, 64; Lindenfelzer Dep., pp. 13-19.

37.     CoreLogic had information on file about Mikhail Arroyo at all relevant times.  Defendant's Admission No. 5.

Dated:  September 11, 2019                    Respectfully submitted,

                            */s/  Greg Kirschner*
**Greg Kirschner (ct26888)**
**Salmun Kazerounian**
**Sarah White**
**CONNECTICUT FAIR HOUSING CENTER**
**60 Popieluszko Ct.**
**Hartford, CT  06106**
**Tel.:  (860) 247-4400**
**greg@ctfairhousing.org**

**Eric Dunn (*PHV*)**
**NATIONAL HOUSING LAW PROJECT**
**1663 Mission St., Suite 460**
**San Francisco, CA  94103**
**Tel.:  (415) 546-7000**
**edunn@nhlp.org**

**Joseph M. Sellers (*PHV*)**
**Christine E. Webber (*PHV*)**
**Brian C. Corman (*PHV*)**
**COHEN MILSTEIN SELLERS & TOLL PLLC**
**1100 New York Ave., N.W.**
**Suite 500**
**Washington, D.C.  20005**
**Tel.:  (202) 408-4600**
**jsellers@cohenmilstein.com**
**cwebber@cohenmilstein.com**
**bcorman@cohenmilstein.com**