UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CONNECTICUT FAIR HOUSING CENTER** *et al.*,<br><br>　　　　*Plaintiffs,*<br><br>　v.<br><br>**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,**<br><br>　　　　*Defendant.* | No. 3:18-CV-705 (VLB) |

**DECLARATION OF CARMEN ARROYO IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON FILE DISCLOSURE CLAIMS**

Carmen Arroyo states that the following is true and correct:

1. I, Carmen Arroyo, am the plaintiff in this action on behalf of myself and as next-friend for my son, Mikhail Arroyo.

2. Mikhail was involved in an accident in 2015 that has left him unable to walk, speak, or care for himself.

3. Because of Mikhail's disabilities, I provide care for him. I have also been appointed as Mikhail's conservator and am responsible for managing his legal and financial affairs (i.e. conservator of the estate and the person).

4. Following Mikhail's accident, he recuperated in a nursing home; by early 2016, he was nearing the point when he would be ready for discharge.

5. I planned to move Mikhail into my apartment after he had recovered sufficiently for discharge from the nursing home. For that reason I secured a

larger apartment, and in April 2016 submitted an application formally requesting permission from my landlord, WinnResidential, to add Mikhail to my household.

6.  WinnResidential subsequently informed me that my request to add Mikhail to my household was declined based on disqualifying criminal records in his background report from Defendant CoreLogic.

7. Despite this denial of Mikhail's application, I still wanted to secure permission from WinnResidential to add Mikhail to my household.  I decided to gather additional information with which I hoped to persuade WinnResidential to admit him.

8. At the time, I was not aware of Mikhail having criminal records.  I asked Melissa Curry, the WinnResidential office manager in my building, for more information about the reason for denial, but she stated that she could not give me more information, directed me to contact CoreLogic and provided their telephone number.

9. I called CoreLogic and spoke with someone in their consumer relations department.  I requested a copy of Mikhail's consumer file.  I don't recall the exact date of the call but it took place in April 2016 and was after the denial of Mikhail's application on April 26.  This was the first of several telephone calls I had with CoreLogic between then and November 2016.

10. In my telephone calls with CoreLogic I communicated that I was the court-appointed conservator for Mikhail Arroyo and was authorized to obtain a copy of his consumer file, that the information was needed in an effort to secure

2

rental housing, and that Mikhail had disabilities that prevented him from making the request himself.

11. After calling CoreLogic the first time, I received a consumer disclosure request form in the mail from CoreLogic. I returned the completed form on June 14, 2016 and enclosed with the form with certain documentation CoreLogic requested. This documentation included a completed consumer disclosure request form that I had signed, and which listed Mikhail's name, date of birth, and previous addresses; copies of my driver's license and of Mikhail's photo ID, and a copy of my certificate of conservatorship over Mikhail. Attached as Exhibit C is copies of the documents I sent CoreLogic in June 2016.

12. By the fall of 2016, I had not received any further response from CoreLogic regarding my request for Mikhail's file. I therefore called CoreLogic again and reiterated my request for disclosure of Mikhail's consumer file. I again communicated that Mikhail had disabilities that kept him from making the request himself, that I was his conservator, and that the disclosures were needed in connection with an effort to secure housing. The CoreLogic representative with whom I spoke acknowledged that CoreLogic had received my earlier requests and follow-up documentation, but stated that I would need to obtain a "power of attorney" from Mikhail in order to receive his file.

13. After being told I needed a "power of attorney" to obtain Mikhail's consumer file, I spoke with the attorney handling Mikhail's conservatorship and learned that a conservatorship carries greater authority than a power of attorney. Upon learning that information, I called CoreLogic again and told the

3

representative I had learned a power of attorney wasn't necessary to obtain Mikhail's disclosures because the conservatorship provided even greater authority; the representative promised to follow up with CoreLogic's legal department regarding this issue.

14. After this call, a CoreLogic employee, Tina Marie Santos, began following up with me regarding the request. I had multiple phone conversations with Ms. Santos, throughout which I made clear that I was seeking a copy of Mikhail's consumer file, that I was his conservator and was requesting the file for him because Mikhail's disabilities made him unable to request the file himself, and that the disclosures were sought in connection with an effort to secure housing. Ms. Santos also requested additional documentation from me, which I faxed to her on or about November 15, 2016. A copy of the fax I sent to Ms. Santos on or about November 15, 2016, is attached as Exhibit D.

15. Despite the extensive follow-up, my conversations with Ms. Santos did not result in me receiving disclosures of Mikhail's CoreLogic file. Ms. Santos repeatedly stated that "legal" would need to make a decision on whether to provide the disclosures and, if so, what documentation CoreLogic would require first. Ms. Santos continually reported that she was waiting on "legal" to make a decision, but to my knowledge no such decision was ever made. Neither Ms. Santos nor CoreLogic offered any alternative proposals as to how I could obtain Mikhail's file.

16. I understand that CoreLogic produced audio recordings of telephone calls between myself and CoreLogic personnel, and that those recordings have

4

been transcribed by a court reporter. I have reviewed the transcripts. Attached as Exhibit E to this declaration are true and correct transcripts of certain telephone communications between me and CoreLogic personnel that took place between April and November of 2016, in connection with my efforts to obtain a copy of Mikhail's consumer file disclosures.

17. When I still could not obtain a copy of Mikhail's file from CoreLogic after my conversations with Ms. Santos, I contacted the Connecticut Fair Housing Center for assistance with this matter in December 2016. I had no further communications with CoreLogic after that point.

18. But for his disabilities, Mikhail could have personally requested and obtained the file disclosures himself or executed a power of attorney to allow me to do so and used the contents to challenge the determination that his file contained "disqualifying" records.

19. After I determined what Mikhail's criminal record consisted of on my own, with the assistance of the Connecticut Fair Housing Center I was able to persuade WinnResidential to reverse its decision and allow Mikhail to move into my apartment. I was finally able to move Mikhail out of the nursing home in June 2017.

20. I am of sound mind and have made these statements of my own free will; I am competent to testify and if called as a witness in this matter would state as contained in this declaration.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_____
Carmen Arroyo, Declarant

Date: _____11 Sept 2019_____