UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CONNECTICUT FAIR HOUSING CENTER**<br><br>and<br><br>**CARMEN ARROYO, individually and as next friend for Mikhail Arroyo,**<br><br>*Plaintiffs,*<br><br>-v-<br><br>**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,**<br><br>*Defendant.* | Case No. 3:18-cv-00705-VLB |

**DEFENDANT CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO RFP 30**

**Oral argument is not requested.**

Defendant, CoreLogic Rental Property Solutions, LLC ("RPS"), by counsel, submits the following Response in Opposition to Plaintiffs' Motion to Compel Production of Documents in Response to RFP 30. (Dkt. No. 97.)

## I.     PRELIMINARY STATEMENT

Plaintiffs' Motion to Compel (the "Motion") is predicated on a claimed "need" to explore an issue that is irrelevant to Plaintiffs' disparate impact claims. Plaintiffs principally seek documents produced by RPS in another civil action in 2016.[1] However, unlike that other civil action, this *is not* a case where the ability of RPS's algorithm used to match a criminal offense record to an applicant is at issue. In fact, everything that RPS reported about Mikhail Arroyo was indisputably accurate. The matching algorithm also is entirely distinct from the CrimSAFE product at issue in this case, as the CrimSAFE categorization does not occur until *after* the matching process is complete. Plaintiffs' Motion thus distorts the import and role the matching algorithm plays in this case to try and seek even more discovery.

Furthermore, despite the irrelevance of the "matching" issue, RPS worked to provide Plaintiffs with the data and testimony meeting their expressed accuracy needs (just as RPS has done with virtually every one of the *many, many* requests for production served by Plaintiffs). For example, given its lack of contact with applicants, RPS's only insight into any claimed "inaccuracy" of its matching algorithm comes from disputes filed by consumers after the screening reports are transmitted by RPS. So, despite the lack of any accuracy claim here, to try and

---

[1] ***Williams v. Corelogic Rental Prop. Solutions, LLC***, No. PX 16-58, 2016 U.S. Dist. LEXIS 148752, *3, (D. Md. Oct. 26, 2016).

1

avoid yet another discovery dispute, RPS provided Plaintiffs with full data across every category of dispute that it internally tracks – along with data identifying the various ways each of those disputes were resolved – from January 1, 2016 to the present.  Even more, RPS made a corporate witness available to testify in a Rule 30(b)(6) capacity on these same "accuracy" issues and internal analyses.

Discovery in this individual action has already exceeded the proportionality limits of Rule 26(b).  <u>Thousands</u> of documents have been produced.  More than <u>a dozen</u> depositions have been taken.  Still, Plaintiffs seek more.  This Court should deny Plaintiffs' Motion to Compel.

## II. <u>FACTUAL BACKGROUND AND OVERVIEW OF DISCOVERY TO DATE</u>

### A. <u>The Course of Discovery in This Action.</u>

This case arises out of a tenant screening report that was ordered by RPS's customer WinnResidential on Mikhail Arroyo in April 2016.  The CrimSAFE portion of the screening report that RPS provided to WinnResidential accurately reflected that RPS had located a criminal record for Mr. Arroyo.  That identified criminal record also fell into a category of criminal records that WinnResidential it wanted to have identified by CrimSAFE in connection with any tenant screening.  Plaintiffs do not claim that the criminal record identified by RPS was misattributed to Mr. Arroyo.  Nor do Plaintiffs claim that RPS's screening reports inaccurately reported criminal records for any other housing applicant.

Rather, moving away from any claim in this case, Plaintiffs contend the accuracy of the matching algorithm is at issue because RPS's expert witness (Jay Kacirk) testified that the accuracy of RPS's reporting is a legitimate business

purpose of its screening products, including CrimSAFE.  Pls. Mot. Comp. 9 (Dkt. No. 97).  However, Mr. Kacirk opined that "housing providers could not accomplish th[e] categorization and interpretation [of criminal records] efficiently or accurately absent products such as CrimSAFE."  Expert Report of Jay Kacirk, 9, April 15, 2019 ("Kacirk Rep."), attached as Exhibit A.  Mr. Kacirk concluded that categorization products, such as CrimSAFE, "are necessary to ensure the timely and accurate categorization of criminal records in today's environment of mobility where there are large volumes of electronic applications and a large number of unique crimes across federal, state, and local ordinances."  Id. at 13.  Mr. Kacirk's conclusions did not involve any independent assessment of the accuracy of RPS's matching algorithm, which he was not asked to address.

Plaintiffs' present Motion should also be put in context of the overall scope of discovery in this case; context Plaintiffs consistently refuse to acknowledge. Despite the narrow nature of their individual claims, Plaintiffs have continued to seek expansive and unceasing discovery.  During the July 26, 2019 hearing on Plaintiffs' Motion for Extension of Time, the Court advised Plaintiffs to revisit their discovery strategy with a view towards "proportionality" and "reasonableness," including because this case was not a "class action," and because the Court did not see this as a "major" case.  Plaintiffs have not heeded that instruction.  Instead, they have doggedly pursued the opposite strategy.

Since that date, the Parties have participated in nine additional depositions,[2] which spanned roughly 50 hours of live testimony.  In fact, Plaintiffs deposed

---

[2] Multiple depositions had already occurred by the date of the prior hearing.

numerous RPS 30(b)(6) witnesses on 52 topics of inquiry (including subparts), which included testimony on "the accuracy of any devices, systems, algorithms, databases, or processes CoreLogic uses to generate criminal background screening reports, especially CrimSAFE reports . . . ."  See Pls. Notice of Rule 30(b)(6) Deposition, No. 5, July 11, 2019, attached as Exhibit B.  More document discovery requests have been made by Plaintiffs, and more documents have been voluntarily produced by RPS.[3]  Yet, Plaintiffs still seek more.

B. The Prior *Williams* Decisions on Which Plaintiffs' Motion is Based.

This Motion is based on Plaintiffs' claimed recent "discovery" of the 2016 public decision in the *Williams* matter.  In *Williams*, two plaintiffs brought a claim "under 15 U.S.C. § 1681e(b), which requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy' of the information in a consumer report about whom the report relates." 2016 U.S. Dist. LEXIS 148752, *2.  Because that FCRA claim in *Williams* implicated the "accuracy" of the matching algorithm employed by RPS, the district court found (over RPS's objection) that an internal analysis of the matching algorithm conducted by RPS in 2012-2016 was "relevant to Plaintiffs' individual claims under § 1681e(b)."[4]  *Id.* at *8.  Put another

---

[3] Plaintiffs assert in the brief that, during a telephone conference, "RPS represented that [RPS] has never studied the accuracy of CrimSAFE or its matching algorithm." Pl. Mot. Comp. 5.  That contention is utterly false.  No such representation was ever made.  Indeed, the *Williams* decision is public and available for anyone to see through basic legal research.  That type of false claim has no role in this case, and it certainly does not otherwise give merit to Plaintiffs' Motion.

[4] The documents compelled in *Williams* were ordered reproduced in the later action of *Witt v. CoreLogic SafeRent, LLC,* No. 3:15cv386.  *Witt* also involved an accuracy claim under § 1681e(b) of the FCRA.  CrimSAFE was not implicated in *Witt*.

4

way, the Court found the documents to be relevant because they related to plaintiffs' accuracy claim under the FCRA. There is no such claim here.

The documents that were produced in *Williams* also concerned internal analysis by RPS of both "false positives" and "false negatives." As stated by the district court in *Williams*, "a 'false positive' error occurs when a consumer report contains an item, such as a criminal conviction, which is not attributable to the individual with whom the particular credit report relates . . . . A 'false negative' error occurs when a negative item should have been attributed to a consumer but was not." *Id.* at *2. Thus, the internal analysis conducted by RPS was an effort to make sure that its matching algorithm had been optimized to equally avoid false positives and false negatives (*i.e.*, the failure to identify a record for an applicant), the latter of which plainly has no relevance to Plaintiffs' claim of disparate impact. *Id. Williams* also did not involve CrimSAFE in any way. *See generally id.*

### III.    LEGAL STANDARD

To be discoverable under Rule 26(b), information must be "relevant" to an element of a plaintiff's proof. Discovery should be denied when "requests appear to be more of a 'fishing expedition' than a good-faith effort to fill in evidentiary gaps." *Lerwick v. Kelsey*, 150 Fed. Appx. 62, 65 (2d Cir. 2005).

---

Additionally, the documents produced in *Williams* and then in *Witt* were produced under the terms of a court-ordered Stipulated Protective Order, which prevented dissemination of the documents outside of the underlying case and to anyone other than those plaintiffs' attorneys and their experts. Despite noting that fact to the Plaintiffs' counsel, and also despite the fact that this dispute was being brought to this Court's attention, Plaintiffs tried to circumvent the discovery process and the Stipulated Protective Orders by serving a subpoena on plaintiffs' counsel in the *Witt* case seeking the *Williams* documents.

**Fed. R. Civ. P. 26(b)(1)** "restricts discovery to the extent it is disproportionate to the needs of the case, taking into account the 'importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See Winfield v. City of N.Y.*, No. 15-cv-05236, 2018 U.S. Dist. LEXIS 56160, at *12 (S.D.N.Y. Mar. 29, 2018) (denying plaintiffs' request for supplemental statistical data for their FHA disparate impact claim).

Requests for even further written discovery should also be judged in view of the totality of RPS's discovery efforts in the case, including deposition practice. *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293, 2016 U.S. Dist. LEXIS 91570, at *28 (S.D.N.Y. July 14, 2016) (holding that plaintiffs' demand for certain data would require significant undertaking disproportionate to plaintiffs' justification for the data and in light of the plaintiffs' opportunity to discover the information in forthcoming Rule 30(b)(6) depositions).

This Court's previous direction to the Plaintiffs to stay within the bounds of proportionality and reasonableness recognized that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied . . . . [J]udges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Thus, "[m]ere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the

information they hope to obtain and its importance to their case." *Ash Equip. Co. v. Morris*, 2016 U.S. Dist. LEXIS 98464, at *7 (D.S.D. July 28, 2016).

For the reasons set forth below, Plaintiffs' Request for Production Number 30 seeks irrelevant information and does not constitute a "good-faith effort to fill in evidentiary gaps," especially in light of subsequently produced documents and deposition testimony. *Lerwick*, 150 Fed. Appx. at 65.

IV. **ARGUMENT**

Plaintiffs' Request for Production Number 30 is overbroad, ambiguous, and not limited in time. Indeed, despite moving to compel a response to that specific Request, Plaintiffs make no attempt to justify its literal scope or its text.[5] However, through their Motion, Plaintiffs have apparently narrowed this request to the production of an analysis of the matching algorithm that was conducted from 2012 to 2016, as produced in the *Williams* matter. RPS thus focuses its opposition on those identified documents.

A. **The RPS Analysis is Not Relevant Because the Accuracy of RPS's Reporting About Plaintiff, and the Procedures Associated with that Reporting, is not at Issue in this Action.**

Plaintiffs begin their argument with an overview of the *Williams* and *Witt* cases. As noted above, however, in both *Williams* and *Witt*, RPS was alleged to have provided a screening report that listed criminal records that did not belong to

---

[5] The Court can, of course, deny Plaintiffs' Motion to Compel on the basis of the defective request alone. *See, e.g., N.U. v. Wal-Mart Stores, Inc.*, Case No. 15-4885-KHV, 2016 U.S. Dist. LEXIS 88970, at *34 (D. Kan. Jul. 8, 2016) ("The lack of any temporal scope renders the discovery request[s] facially objectionable.").

the plaintiffs, in violation of § 1681e(b) of the FCRA.[6]  There is no such claim here. Plaintiffs do not claim that the criminal offense record included in the screening report for Mr. Arroyo was in any way inaccurate or that RPS's matching procedures were unreasonable.  Nor did Plaintiffs allege that RPS's matching algorithm is working inaccurately with respect to any individual or group of individuals.  In other words, this is not a case where RPS is alleged to have misattributed a criminal record to an individual or failed to implement reasonable procedures to assure the maximum possible accuracy of the information contained in its screening report about Plaintiff (or anyone else).  Hence, RPS's internal analysis of its matching algorithm is not relevant to this case.

Additionally, Plaintiffs' Motion repeatedly relies on a semantic sleight of hand to try and compel the production of the *Williams* documents.  Plaintiffs consistently reference the need to assess "accuracy of CrimSAFE" as a basis for seeking the production of the *Williams* documents.  *See, e.g.*, Pl. Mot. Comp. 9. But, CrimSAFE was not at issue in *Williams* (or *Witt*), and the internal discussions that were produced in *Williams* regard the matching algorithm (*i.e.*, how RPS matches criminal records to applicants), which precedes the separate CrimSAFE categorization process.

---

[6] Although Plaintiffs include a claim under the FCRA in this case, that claim relates to the file disclosure process under § 1681g(a) and has no substantive overlap with the § 1681e(b) claims that were plead in *Witt* and *Williams*.

### B. RPS has Produced the Relevant Dispute Statistics and has Made Available a 30(b)(6) Witness to Testify as to the Accuracy of RPS's Backgrounds Screening.

Assuming *arguendo* that the accuracy of the matching algorithm is somehow relevant to this case, RPS has already provided Plaintiffs with sufficient documentation to make their contentions, as well as live deposition testimony to enable Plaintiffs to assess the accuracy of the algorithm.

Plaintiffs contend they do not have access to the underlying data that RPS analyzed to create the reports they seek the Court to compel from RPS. Pl. Mot. Comp. 10. Not so. As Plaintiffs admit in their Motion, RPS has produced full consumer dispute statistics from January 1, 2016 to the present. And, as RPS's Rule 30(b)(6) witnesses testified, RPS exclusively uses these dispute statistics to analyze the accuracy of its matching algorithm. (*See* Dkt. No. 84-1 p. 9).

It should also be noted that the dispute statistics produced in this case are themselves <u>more on point</u> for purposes of Plaintiffs' proffered relevance than the internal analysis that was undertaken from 2012-2016. Consumer disputes come from those consumers who claim misattribution, *i.e.*, a false positive. And, by their own admission, Plaintiffs' Motion is based on an exploration of the "risk of 'false positives.'" Pl. Mot. Comp. 11. By contrast, the internal analysis conducted by RPS was focused on an internal assessment of the balance between false positives and false negatives, the latter of which has no effect on any consumers and is thus entirely irrelevant to any claim of disparate impact. *Williams*, 2016 U.S. Dist. LEXIS 148752, *2.

Moreover, in seeking these internal documents, Plaintiffs stray well beyond the bounds of their disparate impact claim, which requires actual proof of impact

9

for identified applicants. To the extent accuracy is an issue, the analysis germane to Plaintiffs' disparate impact claim would thus necessarily be focused on data regarding RPS's <u>actual reporting</u>, and not internal discussions regarding the matching algorithm, which is what Plaintiffs now seek. *See, e.g., Estvanko v. City of Perry*, No. 5:09-cv-137, 2011 U.S. Dist. LEXIS 48632, at *31-32 (M.D. Ga. May 6, 2011) ("[T]he kind of statistical analysis needed to prove a disparate impact claim must be more than speculative . . . .").

Finally, Plaintiffs took full advantage of the opportunity to depose three Rule 30(b)(6) witnesses across dozens of topics, with Rule 30(b)(6) testimony spanning more than 20 hours. One of the witnesses, Naeem Kayani, the head executive at RPS, was designated to testify about how RPS assesses the "accuracy of . . . its CrimSAFE product." Plaintiffs took ample time – the full seven hours – to depose Mr. Kayani, including regarding that topic. That is yet an additional reason to deny Plaintiffs' proposed further document production. *See, e.g., Mortgage Resolution Servicing, LLC*, 2016 U.S. Dist. LEXIS 91570, at *28.

C. <u>Plaintiffs' Motion Distorts the Import and Role of the RPS Analysis on the Accuracy of the Matching Algorithm.</u>

For the reasons set forth above, the requested internal analysis is irrelevant. And, even assuming some marginal relevance, Plaintiffs have been provided with dispute data that would relates to RPS's actual reporting activities and associated claims of "false positives." Despite those facts, Plaintiffs assert that they are entitled to the *Williams/Witt* productions based on the testimony of RPS's expert witness, Jay Kacirk. Plaintiffs suggest that RPS's expert found that "CrimSAFE is necessary to keep communities safe because it screens applicants in a more

10

consistent and accurate manner than a human decisionmaker." Pl. Mot. Comp. 9. However, Mr. Kacirk's report should speak for itself.

Among other benefits of the CrimSAFE product described in his report, Mr. Kacirk opined that "housing providers could not accomplish th[e] _categorization and interpretation_ [of criminal records] efficiently or accurately absent products such as CrimSAFE." Kacirk Rep. 9 (emphasis added). Mr. Kacirk discusses at length in his report the number of unique offense categories and the issues those many categories would cause for an entry-level leasing in the absence of products such as CrimSAFE. *See* Kacirk Rep. 9. Mr. Kacirk concluded that products such as CrimSAFE are "necessary to ensure the timely and _accurate categorization_ of criminal records in today's environment of mobility where there are large volumes of electronic applications and a large number unique crimes across federal, state, and local ordinances." *Id.* at 13 (emphasis added). Thus, the heart of Mr. Kacirk's report is the importance of the CrimSAFE product's ability to accurately categorize and interpret criminal records into consistent CrimSAFE categories, as well as the efficiencies that CrimSAFE introduces in that process and the errors that would be introduced without that categorization process.

While Mr. Kacirk did also opine as to the benefits of background screening generally, he did not opine as to the accuracy of the matching algorithm specifically, which would be supported by RPS's own witnesses, if deemed relevant to this case. Indeed, Mr. Kacirk was not provided the dispute data that has been produced to Plaintiffs in this case. Plaintiffs' Motion thus uses contrived bases for seeking this additional discovery.

11

### D. If the Requested Documents are Discoverable, RPS Should Only be Compelled to Produce the *Williams* Documents.

For the reasons set forth above, nothing further should be compelled. In the event the Court deems the internal RPS analysis relevant to the issues in this case, however, the Court should only require that RPS produce the documents from *Williams/Witt*, rather than allowing a further fishing expedition and dragging out this already-prolonged matter in discovery.

The documents from *Williams* were compiled, reviewed, and then subject to an extensive review for attorney client privilege. Given the amount of discovery taken in this case, as well as the additional documents and testimony already produced by RPS in this case spanning through the present date (*e.g.*, dispute statistics, deposition testimony on the matching algorithm through the present date, written descriptions of the matching algorithm, scores of data queries, etc.), there is no proportional or reasonable justification for any claim that RPS should be required to produce "other studies and internal discussions related to accuracy relevant to this case," Pl. Mot. Comp. 9, which would requires many additional weeks of review. RPS has already done more than enough. *See, e.g., Winfield v. City of N.Y.*, No. 15-cv-05236, 2018 U.S. Dist. LEXIS 56160, at *14 (S.D.N.Y. Mar. 29, 2018) (denying the plaintiffs' motion to compel: "[t]here comes a point in time when" the production is sufficient).

### CONCLUSION

For the reasons set forth above, RPS respectfully requests the Court deny Plaintiffs' Motion to Compel.

>
> **Respectfully submitted,**
>
> **/s/ Daniel W. Cohen**
> **Daniel W. Cohen (Bar No. CT 30467)**
> **TROUTMAN SANDERS LLP**
> **875 Third Avenue**
> **New York, NY 10022**
> **Telephone:  (212) 704-6000**
> **Facsimile:  (202) 704-6288**
> **Email:  dan.cohen@troutman.com**
>
> **Timothy J. St. George,** *Pro Hac Vice*
> **TROUTMAN SANDERS LLP**
> **1001 Haxall Point**
> **Richmond, VA 23219**
> **Telephone:  (804) 697-1254**
> **Facsimile:  (804) 698-6013**
> **Email:  timothy.st.george@troutman.com**

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ Daniel W. Cohen
Daniel W. Cohen (Bar No. ct 30467)
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-5901
Email: dan.cohen@troutman.com

1

40311757