UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**CONNECTICUT FAIR HOUSING CENTER**
*et al.*,

    *Plaintiffs,*

  v.

**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,**

    *Defendant.*

No. 3:18-CV-705 (VLB)

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' FCRA CLAIMS**

    **A.  Corelogic violated 15 § U.S.C. 1681g(a)**

Corelogic acknowledges it never disclosed the contents of Mikhail Arroyo's consumer file to his conservator despite receiving multiple requests for disclosure, but argues denial was justified because Carmen. Arroyo never provided proper identification. Corelogic omits key facts and is incorrect on the law regarding the adequacy of her documentation. Corelogic's Rule 30(b)(6) designee acknowledged that (a) its standard practice was to require a power of attorney (POA) when a third-party requested a file on behalf of a consumer; (b) it rejected Ms. Arroyo's June 2016 written request because of the POA rule, not because of a missing SSN, signature placement, or visibility of the seal on the submitted conservatorship document; (c) the June rejection wasn't escalated above the initial supervisor who stated a POA was required. PAUF[1] ¶¶ 38-40.

While 15 U.S.C. § 1681h(a) requires "proper identification before a CRA

---

[1] **Plaintiffs' Additional Undisputed Facts.**

discloses contents of a consumer file, the only court to construe this requirement held that consumers provides proper identification when she supplies information sufficient to confirm their identify—whether or not that information is the same as what the CRA sought or requested. *See Menton v. Experian Corp.,* 2003 WL 941388 (No. 02 Civ. 4687(NRB) at *3 (S.D.N.Y. 2003).

In *Menton,* a consumer requested a copy of his consumer file and provided a copy of his driver's license, and a bank statement with his name and address, and his home telephone number. See *Menton* at *1. Experian declined to make the disclosure because its policy required a SSN. *Id*. The Court held that Experian violated FCRA's disclosure requirements because there was "no reason that Experian could not have verified Mr. Menton's identity and provided him with his credit report soon after receiving the various alternative forms of identification which he did furnish." *Id*. at 3.

Consistent with *Menton*, CFPB rules for consumer disclosures under Regulation V require "nationwide specialty CRAs," such as Corelogic,[2] to have file disclosures policies that "Collect <u>only as much personally identifiable information as is reasonably necessary</u> to properly identify the consumer as required under …. 15 U.S.C. § 1681h(a)(1), and other applicable laws and regulations, and to process the transaction(s) requested by the consumer." 12 C.F.R. § 1022.137(a)(2)(ii) (underline added). *Menton* and this provision reflect that a CRA must only obtain enough identification to avoid improperly releasing a

---

[2] "The term "'nationwide specialty [CRA]' means a [CRA] that compiles and maintains files on consumers on a nationwide basis relating to … (2) residential or tenant history[.]" 15 U.S.C. § 1681a(x).

**2**

consumer's information without demanding so much identification as to unreasonably restrict a consumer's access to his own personal file.

Corelogic's reliance on *Ogbon v. Beneficial Credit Services, Inc.,* 2013 WL 1430467 (S.D.N.Y. 2013) to justify strict documentation requirements is inapt: *Ogbon* involved a consumer who had previously reported identity theft, had security alerts on her files, and provided cryptic and conflicting information in her disclosure request—facts the court found justified "an abundance of caution." *Ogbon* at *9. There was no such basis for heightened scrutiny here.

As Ms. Arroyo sought disclosure of Mikhail's consumer information, proper identification here included both verification of his identity and "reasonable identification" of Ms. Arroyo. *See* 15 U.S.C. § 1681h(d). In June 2016 Ms. Arroyo provided all of this, including Corelogic's file disclosure request form, listing Mikhail's full name, date of birth, telephone number, current and two previous addresses, information about Mikhail's application to WinnResidential ("Winn"), copies of her and his driver's licenses, and a copy of the certificate reflecting her appointment as Mikhail's conservator. Thus, Corelogic had ample information to verify that it was dealing with Ms. Arroyo, that she was seeking disclosures on behalf of Mikhail, and that she had the authority to receive those disclosures. Corelogic's rejected this rejection of this request not based on any concern about identification of either Arroyo but solely on its POA policy and its refusal to consider the conservatorship as an alternative. PAUF ¶¶39-40. Corelogic's claim to have made the determination based on lack of SSN or other nitpicking is a *post hoc* justification, not its true reason. *Id.* Even if it were the true reason, it would be

3

inconsistent with the governing standard for identification. *Menton* at *3.

Ms. Arroyo provided further information to Corelogic in November 2016, including Mikhail's SSN, a utility bill, a Connecticut Department of Social Services letter addressed to her "for Mikhail Arroyo," an updated conservatorship certificate bearing her name and her co-conservator's, Tad Stimson, and another signed file disclosure request form (signed in Corelogic's preferred location). All this information, together with the June 2016 identification materials, would have satisfied a reasonable person as to the Arroyo's identities and Ms. Arroyo's authority to receive the disclosures. Indeed, Corelogic based its continued rejection of the request in November 2016 only on its claim that the conservatorship certificate "did not reflect a visible or impressed seal." Corelogic cites no authority justifying its rejection of a clear copy of the certificate, and requirement of an original document only. Opp. at 13; PAUF ¶ 46.

There do not appear to be any prior cases concerning the need to reproduce embossed seals for FCRA file disclosures. Courts have repeatedly held in other contexts that the absence of a visible seal on a copy of a document is immaterial, so long as the original document was executed with the proper acknowledgements. *See, e.g.*, *In re Robinson,* 403 B.R. 497, 503 (Bankr. S.D. Oh. 2008) ("Inability to detect the notary public's raised seal on the image of the mortgage available in the public records" did not affect validity of mortgage); *Schwab v. GMAC Mortgage Corp.,* 333 F.3d 135, 138 (3d Cir. 2003) (lack of visible notary seal on recorded mortgage document did not affect its validity as statute imposed "no requirement that the embossment be 'capable of photographic

reproduction'"); *Warfield v. Bryon,* 37 Fed. Appx. 651, 655 (5th Cir. 2005) (lack of visible seal on judicial summons did not affect its validity because "[t]he [district court] uses an embossed seal on photocopying, meaning that the absence of a visible seal on a photocopy does not demonstrate that a seal was not on the original."); *Oliver v. New York State Police,* 2019 WL 453363 at *6 (W.D.N.Y. 2019) (same); *see also Smith v. National Credit Systems, Inc.,* 2015 WL 12780446 at *2 (N.D. Ga. 2015) (lack of visible embossed notary seal on court filed copy did not preclude consideration of affidavit, if actually sworn to before authorized officer).

There is no dispute that Ms. Arroyo's original conservatorship certificate had an embossed seal. Indeed, the image reveals part of the seal;[3] the Court should find the partially visible seal on the copies submitted to Corelogic sufficient. Given that copiers, fax machines, and other technology used to transmit file requests are likely to omit embossed seals as well, the only way to ensure that CRAs receive copies with perfectly visible seals would be to send them an original, or a second embossed copy at significant burden and expense.[4] That is unreasonable given the authority accepting documents with seals not visible in other situations where reliability is important. Indeed, many identification materials consumers submit in support of disclosure requests (e.g. drivers' licenses, passports) similarly contain seals, watermarks, and other indicia of authenticity that are not reliably reproducible. Denying photocopies of

---

[3] See Dec. of C. Arroyo, Ex. C at ARROYO000577 (June 16 copy has partially visible seal sufficient to show that the original document had a seal, even if the text is not readable).

[4] A party receives one copy bearing the court's seal. Conn. Prob. R. 6.5.

reproduction'"); *Warfield v. Bryon,* 37 Fed. Appx. 651, 655 (5th Cir. 2005) (lack of visible seal on judicial summons did not affect its validity because "[t]he [district court] uses an embossed seal on photocopying, meaning that the absence of a visible seal on a photocopy does not demonstrate that a seal was not on the original."); *Oliver v. New York State Police,* 2019 WL 453363 at *6 (W.D.N.Y. 2019) (same); *see also Smith v. National Credit Systems, Inc.,* 2015 WL 12780446 at *2 (N.D. Ga. 2015) (lack of visible embossed notary seal on court filed copy did not preclude consideration of affidavit, if actually sworn to before authorized officer).

There is no dispute that Ms. Arroyo's original conservatorship certificate had an embossed seal. Indeed, the image reveals part of the seal;[3] the Court should find the partially visible seal on the copies submitted to Corelogic sufficient. Given that copiers, fax machines, and other technology used to transmit file requests are likely to omit embossed seals as well, the only way to ensure that CRAs receive copies with perfectly visible seals would be to send them an original, or a second embossed copy at significant burden and expense.[4] That is unreasonable given the authority accepting documents with seals not visible in other situations where reliability is important. Indeed, many identification materials consumers submit in support of disclosure requests (e.g. drivers' licenses, passports) similarly contain seals, watermarks, and other indicia of authenticity that are not reliably reproducible. Denying photocopies of

---

[3] See Dec. of C. Arroyo, Ex. C at ARROYO000577 (June 16 copy has partially visible seal sufficient to show that the original document had a seal, even if the text is not readable).

[4] A party receives one copy bearing the court's seal. Conn. Prob. R. 6.5.

such materials would not strike the appropriate balance between protecting data privacy and enabling consumers to access their files, and there is no reason to impose a higher standard on conservatorship certificates.

### B. Corelogic's nondisclosure was willful

Corelogic points to its multiple "escalations" of Ms. Arroyo's file disclosure request and consultations with multiple attorneys as evidence that Corelogic's failure to make the disclosures, despite multiple requests over seven months' time, was not objectively unreasonable. The opposite is true. First, Corelogic failed to escalate the request to anyone with authority to even consider the conservatorship situation until November 1, 2016. PAUF ¶ 42. The June request was rejected by then. Second, while Corelogic suggests Ms. Arroyo was not responsive to requests for additional information, the evidence shows that she twice filled out the required form and sent it in with documents that Corelogic requested, and had multiple telephone conversations with Corelogic staff. FCRA only requires a consumer to make one request for disclosures and provide proper identification—it does not require a consumer to have an ongoing dialogue with a CRA and repeatedly submit materials.

Since Corelogic had proper identification, it had to make the disclosure. A consumer reporting agency does not fulfill its duties under 15 U.S.C. § 1681g(a) through "escalations" or legal consultations. That Corelogic had a duty to make the disclosure, and did not, at least shows negligence. But the Court should find willfulness as Corelogic's decision was objectively unreasonable (*see Safeco Ins. v. Burr,* 551 U.S. 47, 70 (2007)) because its file disclosure policies effectively precluded conservators from obtaining disclosure of consumer information on

behalf of conserved persons.

Corelogic's denial of having "a policy of rejecting file requests from conservators," is merely semantic. Corelogic's policy requires a "notarized power of attorney," which conserved persons legally (and usually practically) cannot sign, and Corelogic rejected, for months, conservatorship papers as an alternative. PAUF ¶¶38-40. Corelogic states that in "scenarios not covered" by its POA policy, employees are "directed to 'reach out to a supervisor' for further guidance." Opp. at 12. But no such escalation happened with the June request. PAUF ¶¶ 39, 40, 42. And requiring conservators to rely on the vagaries of "supervisor outreach" is hardly an objectively reasonable way of ensuring fair and meaningful access. Moreover, there is no evidence that reaching out to supervisors actually leads to file disclosures. PAUF ¶ 39-40. The "supervisor outreach" exception does not rectify the (objective unreasonable) denial of access to consumer files that Corelogic's POA requirement imposes on conserved persons.

Corelogic argues that this was the first request it ever received on behalf of a conserved person, and its failure to make that disclosure cannot have been willful unless Corelogic had received prior complaints about the policy. Opp. at 18, 20. Inaction despite prior complaints shows willfulness because prior complaints put the CRA on notice of the problem but is not the only way to show notice. Ms. Arroyo's prolonged interactions with Corelogic put it on notice of the problem its POA requirement caused for conservators but it failed to take corrective action over at least seven months' time.

7

## II.     REASONABLE ACCOMMODATION.

Corelogic has no written policy for reasonable accommodations, and it treated any such requests as exceptions to be escalated to supervisors who lacked authority to grant any accommodations that had not previously been approved in similar circumstances. PAUF ¶ 44. It is not surprising, therefore, that Corelogic failed to accommodate Mr. Arroyo by releasing his file to his conservator rather than requiring a POA. Corelogic contends it would have made this accommodation given enough time. Yet Corelogic denied Ms. Arroyo's June request without even considering accommodation and seven months elapsed from Ms. Arroyo's first request until she gave up communicating with Corelogic. Corelogic had ample time to make the requested accommodation.[5]

Finally, Corelogic contends the accommodation was not necessary to enable Mr. Arroyo to have equal opportunity to use or enjoy a dwelling unit because there is no proof that the Arroyos' landlord would have reversed the denial any sooner had the file disclosure been made. However, the Fair Housing Act (FHA) does not require plaintiffs to prove that an accommodation would have certainly enabled them to obtain housing. Rather an accommodation is required if it *may be* necessary to afford *equal opportunity* to obtain housing. Here, Ms. Arroyo sought the file disclosure to use in making a request that Winn reconsider the denial of Mr. Arroyo's application. In order for him to have "equal

---

[5] Corelogic's argument that the accommodation was not reasonable, because it would have required Corelogic to disclose Mr. Arroyo's file to Ms. Arroyo without a conservatorship certificate with a visible embossed seal must be rejected for the same reasons as discussed above at 4-5.

8

opportunity" to persuade Winn to lease to him, he was entitled to have the same information a non-disabled person would have to make his case – his file.[6] The accommodation was necessary for Mr. Arroyo to have equal opportunity even if it could not guarantee a successful outcome (although here it ultimately did).

### III. DISPARATE IMPACT OF THE FILE DISCLOSURE POLICY

Corelogic misapprehends the nature of Plaintiffs' disparate impact claim about its POA policy. Corelogic's requirement that a person seeking consumer disclosures on behalf of a third-party present a POA denies access to consumer files to every conserved person. This is a disparate impact because the policy is neutral on its face, yet affects every conserved person, but few non-conserved people. The policy is not necessary to protect consumer privacy because there is an obvious less-discriminatory alternative: treat a court-ordered conservatorship as equivalent to a POA file disclosure. Therefore, the discriminatory effect of the policy is not justifiable and it violates the FHA. *See Mhany Mngmt, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016); Motion at 19-23.

Corelogic argues that disparate impact must be shown through statistics, and that the relevant statistical proof here would be that of "disabled individuals who made a file disclosure request." Opp. at 25. However, Corelogic admits it does nothing to track third party disclosure requests, and thus cannot even answer how many it has handled from conservators. PAUF ¶ 45. In the absence of

---

[6] Corelogic's argument that Winn had the full file (Opp. at 22) is incorrect, **Response to Defendant's Statement of Additional Facts ¶¶ 34, 41, and moreover irrelevant: without the Arroyos having the file, they could not formulate their argument.**

data about actual applicants for files, general population statistics may be used. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308-309 n.13 (1977) (finding data which demonstrates the pool of eligible candidates is appropriate to consider where reliable applicant flow data was not available). Plaintiffs have presented such general population statistics by their unrebutted expert report.[7]

Moreover, while statistical evidence is routine in disparate impact cases, it is not absolutely required. As here, where the challenged policy adversely affects literally every member of the relevant protected class, deeper statistical analysis is superfluous. In disability discrimination cases, non-statistical evidence has been accepted to demonstrate adverse impact. *Cripe v. City of San Jose,* 261 F.3d 877, 889-90 (9th Cir. 2001) (requirement that an officer must have performed patrol service the preceding year meant all officers on modified-duty status (disabled officers)categorically ineligible for specialized assignments had disparate impact); *Allmond v. Akal Sec., Inc.,* 558 F.3d 1312, 1317 (11th Cir. 2009) (court made no reference to statistical evidence, but began analysis in disability disparate impact case by reviewing the qualification standard for business necessity). Disparate impact liability applies where a discriminatory policy "actually or predictably results in a disparate impact on a [protected] group…" 24 C.F.R. § 100.500(a). The fact that the POA rule effectively precludes any

---

[7] Corelogic argues that Plaintiffs' expert Nancy Alisberg's evidence should be disregarded because her report was signed, but not sworn. That defect has been remedied with submission of a sworn copy as Exhibit 2 here. (Notably, Corelogic relies upon a "declaration" from Naeem Kayani which does not include any signature.)

conservator from obtaining a conserved person's consumer file means the POA policy predictably results in a disparate impact; actual statistics are not required.[8]

## IV. CUTPA CLAIMS

The Court should reject Corelogic's renewed assertion that consumer file disclosures are outside the scope of trade or commerce. The tenant-screening services Corelogic markets to landlords in Connecticut certainly occur in trade or commerce, and the duty to make consumer file disclosures is part of that activity, regardless of the fact that there is no fee charged to the consumer for the disclosure. The Court should also reject Corelogic's assertion that its failure to disclose Mr. Arroyo's file to Ms. Arroyo did not cause an injury. Even apart from the downstream impacts the lack of disclosure had on Mr. Arroyo's access to housing, a consumer reporting agency inflicts an information injury sufficient on its own to confer standing under consumer protection statutes similar to CUTPA merely by denying a consumer access to a FCRA-covered file. *See, e.g.*, *Handlin v. On-Site Manager, Inc.,* 187 Wn.App 841, 849–51; 351 P.3d 226 (2015) (withholding screening report used to deny rental housing is cognizable injury).[9]

## V. INJUNCTIVE RELIEF

Corelogic's POA requirement unlawfully denies conservators access to the consumer files of conserved persons and should be enjoined. Corelogic provides

---

[8] Moreover, since conservators might be deterred from making requests for consumer disclosures when they are informed of the power-of-attorney requirement, the predictable effect may be a better measure than the actual effect.
[9] Finally, for the same reasons as discussed above at 4-5, the Court should reject Corelogic's assertion that the condition of the seal on the conservatorship certificate makes denial of the file a practice that is not unfair or oppressive.

services in connection with housing and should be required to adopt policies and procedures to ensure that rental applicants who need reasonable accommodations to access their file disclosures can have those requests considered and responded to in a reasonably prompt and appropriate fashion. Plaintiffs approve of any steps toward rectifying these policies Corelogic has taken—yet voluntary compliance does not moot their claims, and injunctive relief remains important to ensure Corelogic does not return to the problematic practices once the litigation has concluded. *See Friends of the Earth, Inc. v. Laidlaw Env. Svcs.*, 528 U.S. 167, 189 (2000).

The Connecticut Fair Housing Center's ongoing interest that Corelogic's file disclosure practices do not unlawfully disadvantage people with disabilities confers standing. And so long as Corelogic maintains criminal records and other consumer information about Mikhail Arroyo, the possibility remains that Ms. Arroyo may encounter some future need to request disclosure of his file.

## VI.    CONCLUSION

For all of the foregoing reasons, and those set forth in the opening motion, the Court should enter judgment in favor of the Plaintiffs as to liability on counts II, III, IV, V, and VI of their complaint.

Dated: October 18, 2019					Respectfully submitted,

						*/s/ Christine E. Webber*
						Greg Kirschner
						Salmun Kazerounian
						Sarah White

**CONNECTICUT FAIR HOUSING CENTER**
60 Popieluszko Ct.
Hartford, CT 06106
Tel.: (860) 247-4400
greg@ctfairhousing.org

**Eric Dunn**
**NATIONAL HOUSING LAW PROJECT**
1663 Mission St., Suite 460
San Francisco, CA 94103
Tel.: (415) 546-7000
edunn@nhlp.org

**Joseph M. Sellers (*PHV*)**
**Christine E. Webber (*PHV*)**
**Brian C. Corman (*PHV*)**
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W.
Suite 500
Washington, D.C. 20005
Tel.: (202) 408-4600
jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
bcorman@cohenmilstein.com

## CERTIFICATE OF SERVICE

  I hereby certify that on October 18, 2019, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

              */s/ Christine E. Webber*
              **Christine E. Webber (*PHV*)**
              **COHEN MILSTEIN SELLERS & TOLL PLLC**
              **1100 New York Ave., N.W.**
              **Suite 500**
              **Washington, D.C. 20005**
              **Tel.: (202) 408-4600**
              **cwebber@cohenmilstein.com**