# EXHIBIT 8

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CONNECTICUT FAIR HOUSING CENTER** *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,**<br><br>*Defendant.* | No. 3:18-CV-705 (VLB) |

### DECLARATION OF SALMUN KAZEROUNIAN

1. I am over the age of 18 and understand the obligations of an oath.

2. I am a staff attorney at the Connecticut Fair Housing Center and counsel for the plaintiffs in the above-referenced matter.

3. On June 13, 2017, I was present at a fact-finding hearing before the Connecticut Commission on Human Rights an Opportunities ("CHRO") in the matter of Carmen Arroyo, individually and on behalf of Mikhail Arroyo v. ArtSpac0e Windham LP and WinnResidential, Case Nos. 1750140 and 1750141.

4. Plaintiffs produced a recording in the present case with filename (and bates number) CFHC001392.MP3. CFHC001392 is a true and correct reflection of the June 13, 2017 CHRO hearing, at which I represented Ms. Arroyo.

5. My office provided a copy of CFHC001392.MP3 to Sheila Butch Court Reporting Services to be transcribed. Excerpts from the transcript prepared by the court reporter are attached hereto as Exhibit A. After carefully reviewing Exhibit A, I determined it to be a true and correct reflection of portions of the

**June 13, 2017 hearing to the best of my knowledge and recollection.**

**I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.**

_[signature]_

**Salmun Kazerounian, Declarant.**

**Date:** October 18, 2019

# EXHIBIT A

1

TRANSCRIPT OF

Recorded Hearing of

Carmen Arroyo

June 13th, 2017

1  son.
2          INVESTIGATOR TREPANIER:  And what's your Social
3  Worker's name?
4          MS. ARROYO:  Her name was, they just changed them
5  over, so, what was her name, Paulette.  She's the one that
6  works with my son's, money, follows the person for the TBI's,
7  and so she then, I told her what was happening and so she
8  said that she would get someone on the case for me, to see
9  what's taking them so long.
10         INVESTIGATOR TREPANIER:  And had you or she been
11 told that the rejection was based on credit problems?
12         MS. ARROYO:  They, I don't think that they spoken
13 with her, I mean, it was just me.  Whatever they said to me
14 was what I was bringing over to her.
15         INVESTIGATOR TREPANIER:  And, you had, you did not
16 know the reason, but you assumed it was from credit problems,
17 initially?
18         MS. ARROYO:  Yes.
19         INVESTIGATOR TREPANIER:  Did you ever find out
20 what criminal history CoreLogic was basing its denial
21 recommendation on?
22         MS. ARROYO:  After doing a lot of foot work, yes.
23         INVESTIGATOR TREPANIER:  So, what was, what was
24 that criminal history?
25         MS. ARROYO:  They said it was a minor theft, or

1  something to that nature.  It wasn't through CoreLogic, I
2  called the State of Pennsylvania and contacted the Court
3  House there to see if there was anything pending for my son,
4  and in that, I found out that there was and the Judge wrote
5  it off and I submitted the letter to Salmun, after.
6              INVESTIGATOR TREPANIER:  Now, was that information
7  ever provided to the Respondent?
8              MS. ARROYO:  On the day that we came in for the
9  first, I guess.
10             INVESTIGATOR TREPANIER:  So, during the mediation?
11             MS. ARROYO:  Because I just received it not too
12 long after.  I didn't have it on hand until a week or two
13 prior, something like that.
14             INVESTIGATOR TREPANIER:  After they received that
15 information, did the Respondent allow your son to move in, or
16 make an exception to their policy?
17             MS. ARROYO:  No.
18             INVESTIGATOR TREPANIER:  So, to date, your son has
19 not been allowed to move in.  What's your understanding as to
20 why not?
21             MS. ARROYO:  It's his background check.
22             INVESTIGATOR TREPANIER:  Would it benefit your son
23 to live with you?
24             MS. ARROYO:  Yes.
25             INVESTIGATOR TREPANIER:  And can you explain to me

1    point, she and I went back and forth on the phone a couple of
2    times and I explained that there appeared to be a
3    miscommunication, it was the background that was the main
4    factor, so she amended her request and then at that point,
5    we, we consulted on our end, and then that's when the request
6    began from us to them to find additional information on the
7    factors that they were looking to have been waived.
8              INVESTIGATOR TREPANIER:  Did you personally
9    contact a representative from CoreLogic about Mr. Arroyo?
10             MR. CUNNINGHAM:  No.
11             INVESTIGATOR TREPANIER:  Do you know if anybody
12   from WinnResidential did?
13             MR. CUNNINGHAM:  I know that no one on the site
14   level, I know that Melissa or myself did not, I can't speak
15   to upper management.
16             INVESTIGATOR TREPANIER:  Were you provided with
17   any additional information about Mikhail Arroyo's criminal
18   history?
19             MR. CUNNINGHAM:  I was at the hearing, the
20   mediation hearing, Ms. Arroyo and her Attorney provided us
21   with the paperwork from the State of Pennsylvania.
22             INVESTIGATOR TREPANIER:  Other than that, or
23   previously to that, had you received any additional
24   information?
25             MR. CUNNINGHAM:  No.

1 INVESTIGATOR TREPANIER: And can I, do you have a
2 printed response?
3 MR. CUNNINGHAM: Sure.
4 UNIDENTIFIED MALE: Just a point of clarification,
5 that letter from Mr. Cunningham came before the, the December
6 20th letter from the Connecticut Fair Housing Center.
7 UNIDENTIFIED MALE: Just a point of clarification,
8 he's not a factor in this.
9 INVESTIGATOR TREPANIER: I understand that. Did
10 this letter is addressed to Maria Cuerda, is there a letter
11 that you responded back to Attorney Kazerounian?
12 MR. CUNNINGHAM: I believe at that point; we
13 engaged our Attorney. Forgive me if I'm missing it.
14 INVESTIGATOR TREPANIER: To date, what's your
15 understanding as to why Mikhail Arroyo has not been allowed
16 to move in to ArtSpace at Windham?
17 MR. CUNNINGHAM: The, the crux of the issue is
18 that we were not provided information related to what they
19 were attempting to have waived, in this case. Subsequent to
20 that, at the mediation, we received information, additional
21 information related to those records, and I know there have
22 been conversations that have taken place between now and then
23 related to allowing Mr. Arroyo to move into the property, but
24 I have not been privy to the specifics of those.
25 INVESTIGATOR TREPANIER: I was provided with the

1   understanding what the background was.
2               INVESTIGATOR TREPANIER:  Anything else?
3               UNIDENTIFIED MALE:  I don't want to write it all
4   out because it would take a while, I know.
5               INVESTIGATOR TREPANIER:  So, in the Tenant
6   Selection Plan…
7               MR. CUNNINGHAM:  Um-huh.
8               INVESTIGATOR TREPANIER:  Which I referenced
9   earlier…
10              MR. CUNNINGHAM:  Sure.
11              INVESTIGATOR TREPANIER:  On Page 8, it says that
12  there are certain criteria, consideration of circumstances
13  relevant to a particular case, which include:  seriousness of
14  offense, the affect denying tenancy would have on the
15  community, I referenced that earlier as well, were those
16  factors considered in Ms. Arroyo's son's situation?
17              MR. CUNNINGHAM:  Again, are you referring to the
18  initial decision made by CoreLogic, because that's going to
19  require specifics of their criteria, which we talked about
20  previous to that.
21              INVESTIGATOR TREPANIER:  Um-huh.
22              MR. CUNNINGHAM:  If you're talking about the
23  granting of a reasonable accommodation, those things would
24  have been taken into account, assuming that we had additional
25  background information on what the mitigating factors were.

1  is, and what we've requested, which is the specific reason, I
2  think that the first request, like you said before, was based
3  on credit, we said well, it doesn't apply to the situation,
4  so there was another issue requested for, you know, whatever
5  it is, to waive it.  To be able to evaluate the
6  accommodation, we wanted to understand the specifics of what
7  the ask was, and that's the information that we were
8  requesting.  That's the basis for us to not approve the
9  request.
10             INVESTIGATOR TREPANIER:  Then at some point after
11 the CHRO Complaint was filed, my understanding is that at the
12 mediation the criminal history was provided.  Did you receive
13 that information or are you aware of that information?
14             MR. LUND:  I'm aware of the information, yes.
15             INVESTIGATOR TREPANIER:  And do you know why to
16 date the exception hasn't been made for Mr. Arroyo to live
17 there?
18             MR. LUND:  It's been discussed, and Robert, if I
19 may.
20             INVESTIGATOR TREPANIER:  So, let me just preface
21 this by saying…
22             MR. LUND:  Sure.
23             INVESTIGATOR TREPANIER:  Don't tell me anything
24 that counsel has told you or discussed with you.
25             MR. LUND:  Sure.

```
 1   CoreLogic is provided with a separate criteria for each
 2   complex?
 3              MR. LUND:  I don't know the answer to that
 4   question.
 5              INVESTIGATOR TREPANIER:  To the best of your
 6   understanding, does CoreLogic provide a decision or a
 7   recommendation?
 8              MR. LUND:  To my understanding, it's a decision.
 9              INVESTIGATOR TREPANIER:  Did you have a question?
10   Did you follow the screening criteria that existed when,
11   actually, do you know whether the screening criteria that
12   existed was followed when Ms. Arroyo applied to ArtSpace?
13              MR. LUND:  Yes.
14              INVESTIGATOR TREPANIER:  Prior to the mediation in
15   this matter, had you received any of the specifics of the
16   background situation from Ms. Arroyo or her son so you can
17   consider their reasonable accommodation request?
18              MR. LUND:  No.
19              INVESTIGATOR TREPANIER:  Did you want to pass me?
20              UNIDENTIFIED MALE:  Yeah, just one second.
21              INVESTIGATOR TREPANIER:  When Ms. Arroyo, when
22   Mr. Arroyo's application was denied, did WinnResidential know
23   if he was a risk to other tenants or the property?
24              MR. LUND:  WinnResidential knew that he didn't fit
25   the criteria at the time of the application.
```

# C E R T I F I C A T E

    I hereby certify that I am a Notary Public in and for the State of Connecticut.

    I further certify that the foregoing is a complete and accurate transcription of the recorded proceeding to the best of my knowledge and belief.

    I further certify that I am neither of counsel nor attorney to any of the parties to said cause, nor of either counsel in said cause, nor am I interested in the outcome of said cause.

    Witness my hand and seal as Notary Public this 25th day of July, 2019.

_____
Sheila D. Butch

My Commission Expires: 5/31/2024