**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

CARMEN ARROYO, *et al.*,

    -v-

CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC

**Case No. 3:18-cv-00705-VLB**

## MOTION TO SET ASIDE ORDER EXTENDING SCHEDULING ORDER

CoreLogic Rental Property Solutions, LLC ("RPS"), pursuant to Local Civil Rule 7(b), states as follows to set aside the Court's text Order (Dkt. No. 148) extending certain pretrial deadlines based on Plaintiffs' prior request. As set forth below, there was no good cause for Plaintiffs to have sought that relief, and the full context provided by this Motion explains why.

## INTRODUCTION

Discovery closed five months ago. The parties then filed and fully briefed their motions for summary judgment based on the factual theories disclosed in discovery. Among other points, RPS argued that summary judgment is required because Plaintiffs' disclosed liability theory of disparate impact, which relies on statewide population demographics that bear no relation to the relevant applicant pools, fails as a matter of law.

Months after that briefing closed, Plaintiffs sought to reopen discovery and extend pretrial deadlines in order to engage an additional expert based on certain zip code data that was recently produced by RPS in response to the Court's Order on Plaintiffs' motion to compel. That extended discovery period will require

**ORAL ARGUMENT NOT REQUESTED**

multiple new expert disclosures, additional depositions, and it will also likely require the reopening of summary judgment briefing.

As courts have consistently held, the reopening of discovery at this late stage of the case is highly prejudicial and unfair.  That is especially true given the context of Plaintiffs' request.  For instance, the lone request for production that was partially compelled by the Court (RFP No. 49) was served by Plaintiffs *after* the deadline for expert disclosures had passed and the parties served their expert reports.  To the extent Plaintiffs were planning to use zip code data in connection with their expert reports, it is axiomatic that such data had to be sought prior to the deadline for expert disclosures and service of expert reports by both parties. Plaintiffs, however, never disclosed that sequencing to the Court in their motion, which alone precluded a showing of good cause under Fed. R. Civ. P. 16(b).

Plaintiffs also represented in their extension motion that their proposed new "expert" will attempt to provide testimony that is different from the only statistical disparate impact theory they advanced throughout the past two years in this case. Throughout this multi-year litigation, Plaintiffs staked their alleged claim of "disparate impact" on statewide population demographic data.[1]   Plaintiffs confirmed that factual basis for their disparate impact claims fact throughout

---

[1] RPS has detailed in its own cross motion for summary judgment that Plaintiffs' contentions in this regard – which are divorced from any actual applicant pool data – are contrary to FHA jurisprudence, including in the Second Circuit.  *See, e.g.*, *Ungar v. N.Y. City Hous. Auth.*, 363 Fed. Appx. 53, 56 (2d. Cir. 2010) (affirming summary judgment for defendant:  "To know whether [the regulation] has disparate impact on Hasidic Jews, we would need to know, at a minimum, the percentage of the approximately 80,000 people who apply for public housing each year that is Hasidic.  Because plaintiffs have not provided this information, they failed to establish a *prima facie* case of discrimination.").

2

discovery, including in verified interrogatory responses and sworn corporate deposition testimony.  Indeed, that statewide statistical theory of disparate impact formed the basis for Plaintiffs' _own_ motion for summary judgment, which is now briefed and awaiting decision.  RPS likewise based its discovery, expert, trial, and summary judgment strategy on those disclosed factual liability theories.  Now, however, Plaintiffs seek to modify their liability theories in a way that is precluded under Fed. R. Civ. P. 37(c).  Again, however, Plaintiffs provided none of this background in their perfunctory filing.

Fundamentally, the Court's Scheduling Order (Dkt. No. 27) set forth the orderly sequence of the close of discovery and then summary judgment briefing, such that no party would be able to reopen discovery once the parties had detailed their legal arguments.  Plaintiffs' motion disrupted that orderly sequence, but without any good cause to do so.  When the Court granted Plaintiffs' motion to extend the pretrial deadlines before RPS could respond, it did so in the absence of _any_ of the critical context that follows.  But, properly placed in context, Plaintiffs' motion for extension lacked good cause on multiple grounds.

For the reasons that follow, the Court should set aside its Order extending certain pretrial deadlines and restore the prior May 2020 trial date.

## LEGAL STANDARD

I.    **The standard for modification of scheduling orders under Rule 16(b).**

Under Local Rule 7(b)(2), the Court may grant a motion for an extension of case deadlines "before expiration of the period ordinarily permitted for opposition papers," which occurred here, with the Court ruling eleven days before RPS's

opposition was due.  However, in such a circumstance, a "party may move within seven (7) days of an order granting a motion for extension of time to have the Court set aside the order for good cause."  That should also occur here.  Simply put, the Court's text Order extending the pretrial deadlines – which occurred in the absence of _any_ of the critical context that is set forth herein by RPS – should be set aside for a lack of good cause.

A court's scheduling order may only be modified for good cause and with the judge's consent.  *Odom v. Matteo*, 772 F. Supp. 2d 377, 405 (D. Conn. 2011); *see also* D. Conn. L. Civ. R. 16(b) ("The schedule established by the Court for completing discovery, filing dispositive motions and filing a joint trial memorandum shall not be modified except by further order of the Court on a showing of good cause.").  The Local Rules of this Court likewise require a party seeking to modify a scheduling order to make a "particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan."  D. Conn. L. Civ. R. 16(b).

In determining whether a party has demonstrated "good cause," "the 'primary consideration is whether the moving party can demonstrate diligence.  It is not, however, the only consideration.  [A court may also] consider other relevant factors including, in particular, whether allowing the amendment . . . at this stage of the litigation will prejudice defendants.'"  *This, LLC v. Jaccard Corp.*, No. 3:15cv1606, 2016 U.S. Dist. LEXIS 196414, at *4 (D. Conn. Nov. 30, 2016) (quoting *Kassner v. 2d Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)); *see also*

*Casagrande v. Norm Bloom & Son, LLC*, No. 3:11cv1918, 2014 U.S. Dist. LEXIS 158752, at *6 (D. Conn. Nov. 10, 2014) ("[O]ther factors to consider when assessing whether to enlarge a discovery deadline include the imminence of trial; whether the request is opposed; . . . whether the moving party foresaw the need for additional discovery . . . and whether further discovery is likely to lead to relevant evidence.").

II.     **The standard to advance new liability theories at trial under Rule 37(c).**

In addition to the stringent requirements of Rule 16(b), Rule 37(c) further governs attempts by a party to introduce a new claim or defense into a case.  Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Further, Rule 26(e)(1) states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

"The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless" in order to permit any such new claim to proceed.  *Agence France Presse,* 293 F.R.D. at 685.  That burden applies to a party's failure to disclose "information," as well as any related legal "theories" and arguments based on those facts.  *Agence France Presse v. Morel*, 293 F.R.D. 682, 686 (S.D.N.Y. Oct. 24, 2013) (granting a motion to strike new damages theory); *Evers v. Safety-Kleen Sys.*, No. 10-02556, 2012 U.S. Dist. LEXIS 96594 (D. Ariz. July

12, 2012) (granting Rule 37 to strike a "declaration and supporting exhibits, and any argument based on them.").

## ARGUMENT

I.   **Plaintiffs did not request the zip code data on which their extension motion was based until after the deadline for expert disclosures had passed.**
In their extension motion, Plaintiffs argued that the schedule had to be extended to allow for additional expert practice based on the zip code data recently produced by RPS.   However, Plaintiffs' contention that they need to conduct additional expert discovery using the RPS zip code data is belied by the fact that Plaintiffs did not request that zip code data until *after* the agreed-upon deadline for expert disclosures had elapsed.   Plaintiffs never mentioned that fact to the Court in their extension motion.

The Parties' Rule 26(f) Report directed the Parties to designate trial experts and produce corresponding expert reports on any issues on which they bore the burden of proof by January 15, 2019.   (Dkt. No. 22.)   The Parties subsequently agreed to an extension of this deadline until April 15, 2019.   On that date, the parties mutually served their respective expert reports on those issues.

Much earlier in the case, on October 26, 2018, Plaintiffs served their first written discovery requests on RPS, which consisted of a single set of Requests for Production.   (*See* Pls' First Req. Produc., Oct. 26, 2018, attached as Exhibit A.) Despite including 43 document requests (with many further discrete subparts), not one requested information about the location of properties in Connecticut that have used the CrimSAFE product.   *Id.*

On April 19, 2019, *after* the agreed-upon deadline for the Parties to serve their expert reports on any issues on which they bore the burden of proof, Plaintiffs served their second set of discovery requests.  It was one of those requests – Request for Production No. 49 – that was partially compelled by the Court in mid-January 2020,[2] resulting in the production of certain zip code data.

Plaintiffs' failure to request that zip code data until after the deadline to serve their expert report straightforwardly precluded a showing of good cause to allow any additional expert practice based on that data.  *See, e.g., Earle v. H&M Hennes & Mauritz L.P.,* No. 1:15-CV-1060, 2017 U.S. Dist. LEXIS 27583, *13-14 (N.D.N.Y. Feb. 28, 2017) ("It is not clear whether the impetus to hire an expert was triggered by the deposition of the H&M representative, but such claim is of no moment since that witness's deposition was originally noticed in October 2016, which was after the

---

[2] It is notable that even RFP No. 49 did not limit its demands to the zip code data that RPS has now produced.  Instead, RFP No. 49 made complex and irrelevant requests for scores of data over a ten-year period.  The text of the request is as follows:

> For each property in Connecticut for which CrimSAFE has been used in the past 10 years, produce the name and address of the complex (e.g. ArtSpace Windham), the landlord or management company (e.g. WinnResidential), the CrimSAFE configuration, the total number of people of each race (based on the race code field in the table `CRMMASTP` in database ` CRIMINALDB `) for whom CrimSAFE has returned a decline decision in each calendar year between 2010 and 2019 (inclusive), and the total number of Connecticut residents of each race whose criminal records would trigger a CrimSAFE decline decision based on the property's current CrimSAFE configuration.

In partially granting this request, the Court reached a compromise, rejecting the vast majority of the data sought by Plaintiffs.  If Plaintiffs viewed this zip code data as critical, as they now claim it to be, they should have simply requested it.  They never did.  Regardless, it is indisputable that no location-specific data about RPS's customers was ever served until after the deadline for expert disclosures.

expert disclosure deadline originally set in the Court's Scheduling Order.  The reasons offered by Plaintiff's counsel in his Letter Request for an extension of the Court's established expert deadlines simply do not establish due diligence nor good cause for the requested extension.  The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted.") (internal quotation marks and citations omitted); *see also Casagrande*, 2014 U.S. Dist. LEXIS 158752, at *6 ("Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests have been denied.").

II.   **Plaintiffs' attempt to engage experts to advance new factual theories of liability was precluded under Rule 37(c).**

Plaintiffs' attempt to restructure their entire statistical argument based on zip code data produced by RPS was also independently precluded under Rule 37(c), as no such factual liability theory was ever disclosed in discovery.  Again, however, Plaintiffs omitted this important context from their motion.

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  As discussed above, Plaintiffs have based their entire theory of liability on statewide statistical data, even going so far as to make it the centerpiece of their second motion for partial summary judgment.  (*See* Dkt. 116-1, at pp. 20-24.)  That summary judgment filing was consistent with Plaintiffs' discovery disclosures.  In response to multiple interrogatories requiring Plaintiffs to state all facts allegedly supporting their

8

disparate impact claim, Plaintiffs stated that "[t]he Complaint already explains the factual bases for these contentions in detail, supported with citations to statistical evidence . . . ."  (*See* Pls' Resp. to Def's Interrog. Nos. 10-11, Jan. 31, 2019, attached as Exhibit B.)   The Complaint, however, contained only state and nationwide statistics regarding demographics of certain races.  (*See* Dkt. No. 1, ¶¶ 105-127.)   When further pressed at the Rule 30(b)(6) deposition as to the statistical basis for their claim of disparate impact, Plaintiffs unequivocally confirmed they were relying only on the statewide statistics in the Complaint, and not any geographic areas specific to where RPS's customers operate:

> <u>Question:</u>   [So] the relevant statistics for purposes of establishing the claim for disparate impact are set forth in the Complaint.
>
> <u>Answer:</u>  Yes.

(*See* Deposition of Erin Kemple, July 23, 2019, 256:22-257:1, attached as Exhibit C.)   RPS's legal strategy, expert retention, discovery, and motions practice over the past two years was thus built around countering Plaintiffs' (faulty) liability theories of disparate impact.  Indeed, RPS has now fully briefed its cross motion for summary judgment based on the statistical disparate impact theory of liability that was disclosed by Plaintiffs during discovery.

There is no "substantial justification" – let alone good cause – for such an attempted change in position by Plaintiffs at this late stage.  *See, e.g., Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (the purpose of the Federal Rules "is to prevent the practice of 'sandbagging' an opposing party"); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 U.S. Dist. LEXIS 86457, *4-5 (S.D.N.Y. Aug. 17, 2010) ("prejudice [under Rule 37(c) to [the movant] is particularly great

because discovery, which closed over four months ago, would have to be reopened for [the movant] appropriately to respond to ATA's damages calculations.").

III.   **Plaintiffs did not demonstrate good cause under Rule 16(b) to extend the pretrial deadlines in the Scheduling Order.**

Finally, Plaintiffs failed to meet the good cause standard for an extension of the pretrial deadlines in the Scheduling Order because they were not diligent in seeking the information on which their request was based, and also because the prejudice to RPS at this late juncture in having to counter new factual liability theories would be substantial.

A.   **Plaintiffs' lack of diligence in seeking the requested information.**

Courts in the Second Circuit regularly find a lack of good cause under Rule 16(b) when a party attempts to assert a new factual theory of liability at a late stage of the case that is contrary to the disclosed liability theory, and especially so where the new legal theory being advanced was reasonably foreseeable prior to the request to amend or modify. *United States ex rel. Daugherty v. Tiversa Holding Corp.*, No. 14cv4548, 2019 U.S. Dist. LEXIS 12996, at *3 (S.D.N.Y. Aug. 2, 2019) (finding a lack of good cause where the moving party moved to reopen discovery based on a new legal theory that would require additional document production and deposition testimony); *accord Pal v. Cipolla*, No. 3:18-cv-00616, 2020 U.S. Dist. LEXIS 18807, at *9-11 (D. Conn. Feb. 5, 2020).  Further, "[t]he Second Circuit has . . . held that the discovery period should not be extended when a party has had ample opportunity to pursue the evidence during discovery."   *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 215 (E.D.N.Y. 2014), *aff'd*, 626

Fed. Appx. 316 (2d Cir. 2015) (citing *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)).

To the extent that Plaintiffs wanted to advance a location-specific theory of liability, they had ample opportunity to timely seek such discovery before expert practice.  They chose not to do so in any diligent way, and they cannot do so now.

B.      Modification will severely prejudice RPS.

Courts in this district have found that a motion to modify a scheduling order is substantially and unduly prejudicial to the non-moving party when, as here, discovery has closed and when the parties have already briefed dispositive motions and are near trial.  *See, e.g., Alston v. Cahill*, No. 3:07CV473, 2009 U.S. Dist. LEXIS 85290, at *8 (D. Conn. Sept. 17, 2009) (denying motion to modify the scheduling order "for an otherwise trial-ready case."); *DeFontes v. Mayflower Inn, Inc.*, No. 3:06-cv-1126, 2007 U.S. Dist. LEXIS 72508, at *4 (D. Conn. Sept. 27, 2007) ("Since discovery has closed and since Mayflower has already fully briefed its motion for summary judgment, the Court finds that Mayflower would be severely prejudiced if the Court were to allow the proposed amendment.").

In their motion, Plaintiffs asserted that they do not expect "significant delay." However, the modification provided by the Court requires an additional expert report, rebuttal experts by RPS, and more depositions.  Additionally, although Plaintiffs' motion said nothing about the pending motions for summary judgment, Plaintiffs will presumably also seek to use that additional discovery to relitigate issues on summary judgment, where briefing spanned hundreds of pages and has

been closed for months.  Thus, the delay will be far more substantial than Plaintiffs signaled, which further compounds the prejudice to RPS.

## CONCLUSION

For the foregoing reasons, CoreLogic Rental Property Solutions, LLC, requests that the Court set aside its Order extending the Scheduling Order and restore the May 2020 trial date.

Respectfully submitted,

/s/ Daniel W. Cohen
Daniel W. Cohen (Bar No. CT 30467)
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone:  (212) 704-6000
Facsimile:  (202) 704-6288
Email:  dan.cohen@troutman.com

Timothy J. St. George, *Pro Hac Vice*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone:  (804) 697-1254
Facsimile:  (804) 698-6013
Email:  timothy.st.george@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:  /s/ Daniel W. Cohen
Daniel W. Cohen (Bar No. ct 30467)
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 704-6000
Facsimile:   (212) 704-5901
Email:  dan.cohen@troutman.com

41563498