**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **CONNECTICUT FAIR HOUSING CENTER** | |
| **and** | |
| **CARMEN ARROYO, individually and as next friend for Mikhail Arroyo,** | **Case No. 3:18-cv-00705-VLB** |
| *Plaintiffs,* | |
| **-v-** | |
| **CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC,** | |
| *Defendant.* | |

**DEFENDANT CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC'S
<u>MOTION TO EXCLUDE CERTAIN MEDICAL/INJURY EVIDENCE</u>**

# TABLE OF CONTENTS

**Page**

LEGAL STANDARD ................................................................................ 1

ARGUMENT .......................................................................................... 2

I.    Mr. Arroyo's Alleged Denial of Housing is not a Proximate Cause of Mr. Arroyo's Fall While in a Nursing Home or Hospitalization for Pneumonia .......................................................................................... 2

II.    The Court Should Exclude Any Evidence or Testimony Pertaining to Mr. Arroyo's Fall While in the Nursing Home ........................................ 4

III.    The Court Should Exclude Any Evidence or Testimony Pertaining to Mikhail Arroyo's Pneumonia and Other Conditions ............................. 6

IV.    Even if Deemed Marginally Relevant, Evidence of Mr. Arroyo's Subsequent Fall, Medical Conditions, and Hospitalization Should Be Precluded as Unduly Prejudicial Under Fed. R. Evid. 403 ................... 7

CONCLUSION ........................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Corp. v. City of Miami, Fla.*,
  137 S. Ct. 1296 (2017)................................................................. 2, 3, 4, 6

*Bogart v. City of New York*,
  No. 13-cv-1017, 2015 WL 5036963 (Aug. 25, 2015) ................................. 5

*Casella v. Equifax Credit Information Services*,
  56 F.3d 469 (2d Cir. 1995)............................................................... 3

*Colon v. Porliar*,
  No. 09cv1006, 2012 U.S. Dist. LEXIS 110624 (N.D.N.Y Aug. 7, 2012) ................... 1

*Deskovic v. City of Peekskill*,
  673 F.Supp.2d 154 (S.D.N.Y. 2009) ......................................................... 5

*Empire Merchs., LLC v. Reliable Churchill LLP*,
  902 F.3d 132 (2d Cir. 2018) ............................................................... 3

*Fix v. Cottrell, Inc.*,
  No. 04-1007, 2006 U.S. Dist. LEXIS 110044 (W.D. Mo. Aug. 16, 2006)................... 6

*Gorman v. Experian Information Solutions, Inc.*,
  No. 07cv1846, 2008 WL 4934047 (S.D.N.Y. 2008) ..................................... 3

*Loria v. Gorman*,
  306 F.3d 1271 (2d Cir. 2002) ("[T]he purpose of § 1983 is to adopt the
  constitutional context the common law of torts which has developed a
  set of rules to implement the principle that a person should be
  compensated fairly for injuries caused by the violation of his legal
  rights.").............................................................................. 5

*Martin v. City of New York*,
  793 F. Supp. 2d 583 (E.D.N.Y. 2011) ................................................... 3, 5

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996)................................................................ 1

*Pavone v. Puglisi*,
  No. 1:08cv2389, 2013 WL 245745 (S.D.N.Y. Jan. 23, 2013)................................ 2

*Riverview East Windsor, LLC v. CWCapital LLC*,
  No.10cv872, 2012 U.S. Dist. LEXIS 3311 (D. Conn. Jan. 10, 2012)........................ 3

*Wenning v. On-Site Manager, Inc.*,
  No. 14-cv-9693, 2016 WL 3538379 (S.D.N.Y. June 22, 2016) .................................. 3

**Statutes**

42 U.S.C. § 1983 ........................................................................................... 5

Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ................................................. 1, 3

Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*. .................................................. 1, 2, 4, 5, 6

**Other Authorities**

Fed. R. Evid. 401 ........................................................................................... 1

Fed. R. Evid. 402 ........................................................................................... 1

Fed. R. Evid. 403 ........................................................................................ 1, 7

Plaintiffs have indicated they intend to introduce into evidence testimony about a fall Mr. Arroyo allegedly suffered while in a nursing home, as well as evidence of a hospitalization for pneumonia and other medical conditions while in that facility, in support for their claims for damages under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*  For the following reasons, that testimony should not be admitted into evidence, as it is not relevant to any claims.

## LEGAL STANDARD

Evidence must be relevant to be admissible.  Fed. R. Evid. 402.  The Federal Rules of Evidence define "relevant" evidence as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  And, if an item of proof tends to prove a fact that is of consequence to the determination of the action, it is relevant, but it remains subject to exclusion under Fed. R. Evid. 403, which allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] undue delay."

With these rules in mind, "[t]he purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *Colon v. Porliar*, No. 09cv1006, 2012 U.S. Dist. LEXIS 110624, at *1-2 (N.D.N.Y Aug. 7, 2012) (citing *Luce v. United State*s, 469 U.S. 38, 40 n. 2 (1984)); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely

set for trial, without lengthy argument at, or interruption of, the trial.").  Put another way, "[t]he purpose of a motion *in limine* is to facilitate an efficient trial . . . ." *Pavone v. Puglisi*, No. 1:08cv2389, 2013 WL 245745, at *3 (S.D.N.Y. Jan. 23, 2013).

## ARGUMENT

**I.**   **Mr. Arroyo's Alleged Denial of Housing is not a Proximate Cause of Mr. Arroyo's Fall While in a Nursing Home or Hospitalization for Pneumonia**

Based on Plaintiffs' Amended Damages Analysis ("Damages Analysis") and the deposition testimony of Ms. Arroyo, Plaintiffs have indicated they intend to introduce evidence that Mr. Arroyo suffered a fall during the winter of 2016 and was hospitalized for pneumonia while staying in a nursing home as part of Ms. Arroyo's damages.  The Court should exclude any such testimony.

The Supreme Court has recognized that "[a] damages claim under the [FHA] is analogous to a number of tort actions recognized at common law."  *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1300 (2017).  The FHA requires "some direct relation between the injury asserted and the injurious conduct alleged."  "[P]roximate cause generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct."  *Id.* at 1306 (internal citations omitted).  "The general tendency in these cases, in regard to damages at least, is not to go beyond the first step."  *Id.*

For RPS to be held liable for any damages, their conduct must be a proximate cause for the alleged injury.  *Id.*  "Foreseeability alone does not ensure the close connection that proximate cause requires."  *Id.* at 1299.  While violations of the FHA may "cause ripples of harm to flow far beyond the defendant's misconduct . . . [n]othing in the statute suggests that Congress intended to provide a remedy

**2**

wherever those ripples travel." *Id.* at 1300.  "The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1305.  "A link that is too remote, purely contingent, or indirec[t] is insufficient." *Empire Merchs., LLC v. Reliable Churchill LLP*, 902 F.3d 132, 141 (2d Cir. 2018).

That principle equally applies to claims for actual damages under the FCRA and the CUTPA.  *See, e.g., Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474-75 (2d Cir. 1995) (finding proximate causation is an element for an award of FCRA actual damages); *see also Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693, 2016 WL 3538379, at *23 (S.D.N.Y. June 22, 2016) (same); *Gorman v. Experian Information Solutions, Inc.*, No. 07cv1846, 2008 WL 4934047 (S.D.N.Y. 2008) ("In short, the inaccuracy in the credit report must proximately cause damages to plaintiff."); *Riverview East Windsor, LLC v. CWCapital LLC*, No.10cv872, 2012 U.S. Dist. LEXIS 3311, at *8 (D. Conn. Jan. 10, 2012) ("A claim under CUTPA requires that the defendant's conduct be the proximate cause of harm to the plaintiff.").

Additionally, proximate cause is terminated when "independent intervening acts" operate on the initial conduct.  *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011).  An intervening act is a "new and independent force which was not set in motion by the defendant's own wrongful acts." *Id.*

RPS cannot be held liable for the alleged injuries suffered by Mr. Arroyo while he was in the nursing home, as RPS's conduct (1) was not the proximate cause for the alleged injuries; and (2) intervening actions by third parties broke any causal link between RPS's conduct and the alleged injuries.

## II.   The Court Should Exclude Any Evidence or Testimony Pertaining to Mr. Arroyo's Fall While in the Nursing Home

Testimony regarding Mr. Arroyo's fall while in the care of the nursing home is inadmissible.  Plaintiffs have stated in their Damages Analysis that they are including allegations of a fall suffered by Mr. Arroyo while he resided in the nursing home as part of his alleged "emotional distress" damages.  **Exhibit A**, at 3.  Ms. Arroyo also testified about this fall during her deposition.  Ms. Arroyo Deposition Transcript, **Exhibit B**, at pp. 148:23-149:24 (July 24, 2019).  Ms. Arroyo testified, "[h]e was sitting in the bathroom and I guess the CNA [Certified Nursing Assistant] left the scene and he fell."  Ex. B, at p. 150:5-6.

**First**, the allegations in this case center on RPS returning a criminal record on Mr. Arroyo's screening report at the request of WinnResidential while Mr. Arroyo was staying in a nursing home.  Plaintiffs' introduction of evidence of damages of a fall that occurred at some unspecified date in a nursing home runs counter to established principles of proximate cause, both under the FHA and common law generally.

Plaintiffs are seeking to go far beyond the "first step" of causation to hold RPS liable for the fall.  *See City of Miami*, 137 S. Ct. at 1306.  **First**, the required causal chain to find that RPS is liable for the fall is extensive and multi-faceted.  RPS would need to have caused not only Mr. Arroyo to live in that nursing home, but also have caused the CNA to neglect Mr. Arroyo, while also in some way contributing to the fall itself.  Also, Plaintiffs cannot establish that Mr. Arroyo would not have suffered a similar fall in the care of his mother outside of a professional care setting.

4

**Second**, intervening acts by the nursing home that was caring for Mr. Arroyo supersede any causal link between RPS and Mr. Arroyo's fall. Ms. Arroyo testified the CNA was not supervising Mr. Arroyo when he fell. *See* Ex. B, at p. 150:5-6. Therefore, any responsibility for the fall is due to actions of the nursing home or its employees rather than any conduct by RPS. *Martin v. City of New York*, 793 F.Supp.2d 583 (E.D.N.Y. 2011), is instructive in this regard. In an action brought under 42 U.S.C. § 1983, a prisoner brought suit against a municipality for injuries suffered after his arrest while he was in jail at the hands of other inmates.[1] The court acknowledged that while there was potentially *some* remote link between the actions of the officer and the injuries ultimately suffered by the plaintiff, the causal chain was too attenuated to support a finding of proximate causation. *Id.* at 587. "Tort law teaches that merely placing a plaintiff in a situation where the ultimate injury can occur simply does not support a finding of proximate causation." *Id.*

This case is analogous. Even assuming *arguendo* RPS's denial of housing was a cause-in-fact of the fall suffered by Mr. Arroyo, RPS's conduct was not sufficiently related to the fall as a matter of law to hold them liable.[2]

---

[1] While it is a different statute, civil rights suits are also examined under the same principles of common law torts as FHA claims. *See Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002) ("[T]he purpose of § 1983 is to adopt the constitutional context the common law of torts which has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights.").

[2] *See also Deskovic v. City of Peekskill*, 673 F.Supp.2d 154 (S.D.N.Y. 2009) (finding no proximate cause for injuries suffered during incarceration to the arresting officers because the state assumed the duty to protect him from harm after the arrest); *Bogart v. City of New York*, No. 13-cv-1017, 2015 WL 5036963 (Aug. 25, 2015) (finding no proximate cause for the City for injuries suffered by the Plaintiff due to the closing of a public park).

III.   **The Court Should Exclude Any Evidence or Testimony Pertaining to Mikhail Arroyo's Pneumonia and Other Conditions.**

Ms. Arroyo also testified that Mr. Arroyo suffered from pneumonia, a pulmonary abrasion, and that his bowels were backed up around the same time as the fall, but it is unclear if she alleges the two were related.  Ex. B, at pp. 152:4-154:14.  That testimony should be excluded as irrelevant, and that any probative value is greatly outweighed by the potential for unfair prejudice.

Similar to the fall discussed above, Mr. Arroyo's medical conditions are too attenuated from RPS's conduct to form the basis for any claim for damages.  The required causal chain from RPS's conduct to the alleged pneumonia and other conditions is even more convoluted than the fall.  Plaintiffs are attempting to hold RPS liable for "wherever the ripples travel" of the alleged violation of the FHA.  *City of Miami*, 137 S. Ct. at 1300.

In addition to being responsible for Mr. Arroyo residing in the nursing home, Plaintiffs seek to hold RPS liable for Mr. Arroyo's blood clots caused by him sitting in a wheelchair, his constipation which is likely caused by the medication he takes, and pneumonia which led to Mr. Arroyo's week-long hospitalization.  *See* Ex. B, at pp. 153:17-154:14.  Such a causal chain goes far beyond the "first step" that is typical for FHA damages cases, and it also requires numerous intervening factors, any one of which supersedes any allegation that RPS proximately caused such injuries.  Ms. Arroyo's express lack of knowledge as to whether any of these medical issues were even related to his physical location – two events that have no plausible connection – also further prevents her from seeking to recover these medical-related damages at trial.  *See, e.g., Fix v. Cottrell, Inc.*, No. 04-1007, 2006

U.S. Dist. LEXIS 110044, *16 (W.D. Mo. Aug. 16, 2006) ("Mr. Fix testified that he did not know the exact cause his accident and resultant injuries. Accordingly, Mr. Fix's testimony fails to establish but-for causation because he cannot identify the cause which produced his injury and without which his injury would not have occurred.").

**IV.    Even if Deemed Marginally Relevant, Evidence of Mr. Arroyo's Subsequent Fall, Medical Conditions, and Hospitalization Should Be Precluded as Unduly Prejudicial Under Fed. R. Evid. 403.**

Under Fed. R. Evid. 403, evidence should be excluded if, although it meets the standard for relevancy, its probative value is substantially outweighed by a risk of either unfair prejudice, confusing the issues, misleading the jury, or undue delay.  Here, admission of the anticipated evidence of Mr. Arroyo's fall in a nursing home and related medical conditions/nursing home stay would no doubt appeal to sympathy at the expense of the proper merits-based determinations.  Moreover, if this evidence is permitted, it will lead to a "trial within a trial," as RPS seeks to adduce evidence of the intervening causes of Mr. Arroyo's injuries – *e.g.*, the actions of the nursing home – and thus the trial will be side-tracked onto a wholly-attenuated matter.

For all these reasons, the proposed evidence should be excluded under Fed. R. Evid. 403, even if it determined to have some marginal relevancy.

**CONCLUSION**

For the foregoing reasons, CoreLogic Rental Property Solutions, LLC respectfully requests that the Court exclude any testimony related to Mr. Arroyo's fall while in the care of the nursing home, and testimony related to Mr. Arroyo's medical and related conditions while in that facility.

7

Respectfully submitted,


**/s/ Daniel W. Cohen**
**Daniel W. Cohen (Bar No. CT 30467)**
**TROUTMAN SANDERS LLP**
**875 Third Avenue**
**New York, NY 10022**
**Telephone:  (212) 704-6000**
**Facsimile:  (202) 704-6288**
**Email:  dan.cohen@troutman.com**

**Timothy J. St. George,** *Pro Hac Vice*
**TROUTMAN SANDERS LLP**
**1001 Haxall Point**
**Richmond, VA 23219**
**Telephone:  (804) 697-1254**
**Facsimile:  (804) 698-6013**
**Email:  timothy.st.george@troutman.com**

8

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 15, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:  <u>/s/ Daniel W. Cohen</u>
Daniel W. Cohen (Bar No. CT 30467)
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 704-6000
Facsimile:   (212) 704-5901
Email:  dan.cohen@troutman.com